# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| S. SHAMIM, | ) | |
|      **Plaintiff,** | ) | |
| | ) | |
|   **v.** | ) | No. 11 C 01479 |
| | ) | |
| SIEMENS INDUSTRY, INC. (f/k/a | ) | **Judge Ruben Castillo** |
| SIEMENS BUILDING TECHNOLOGIES, | ) | |
| INC., and CHANDRASHEKAR | ) | |
| DANDEKAR, | ) | |
| | ) | |
|      **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Syed Shamim ("Shamim" or "Plaintiff") brings this action under Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("Section

1981"), against his former employer Siemens Industry, Inc. ("Siemens") and former supervisor

Chandrashekar Dandekar (collectively, "Defendants"). (R. 12, Am. Compl. at 1-2.) Presently

before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6). (R. 20, Defs.' Mot. at 1.) For the reasons stated below, Defendants' motion is granted

in part and denied in part.

### RELEVANT FACTS

Shamim is a resident of McHenry County, Illinois. (R. 12, Am. Compl. ¶ 1.) He is of

Pakistani national origin, a member of the Islamic faith, and a United States citizen. (*Id.* ¶¶ 5-6.)

Shamim was employed by Siemens as a full-time Business Analyst III from March 24, 2008,

until his discharge on May 15, 2009. (*Id.* ¶¶ 7, 23.) Shamim worked out of Siemens' Buffalo

Grove, Illinois office throughout this time. (*Id.* ¶ 7.)

During his tenure with Siemens, Shamim's supervisors included Dandekar, a Georgia resident, and Achim Ehning. (*Id.* ¶¶ 3, 9, 16.) Additionally, Shamim communicated with Erin Smith, a co-worker, who worked out of Siemens' Georgia office. (*Id.* ¶ 10.) According to, Shamim, he worked at Siemens for over a year without incident. (*Id.* ¶ 8.) During this time, his work performance surpassed expectations and he received dozens of commendations and compliments from Siemens' end-users. (*Id.*)

Shamim avers that in 2009 Smith made derogatory comments about his accent. (*Id.* ¶ 11.) Shamim informed her that her comments were "not funny" and asked her to stop ridiculing his accent on multiple occasions. (*Id.* ¶ 12.) On April 2, 2009, Smith sent an e-mail message to Shamim and his supervisors regarding a project issue on which Shamim and Smith had differing opinions. (*Id.* ¶ 13.) Smith wrote that it was "an English translation issue." (*Id.*) Shamim reported the April 2nd e-mail (the "April 2nd e-mail incident") to Mac Carr in Siemens' human resources ("HR") department. (*Id.* ¶ 14.) Carr and another HR employee, Julie Hess, investigated the incident. (*Id.*) On April 3, 2009, Smith sent a second e-mail to Shamim and his supervisors apologizing for her earlier comments and admitting they were inappropriate. (*Id.* ¶ 15.) On April 16, 2009, Carr and Hess sent an interoffice letter to Shamim and Ehning stating that they were "unable to conclude that any discriminatory or prejudicial conduct occurred." (*Id.* ¶ 18.)

After the April 2nd e-mail incident, Dandekar allegedly began subjecting Shamim to "outbursts of yelling, profanity and insults" about Shamim's religion and ethnicity. (*Id.* ¶ 16.) During one such outburst, Dandekar revealed to Shamim that he was having an intimate relationship with Smith. (*Id.* ¶ 17.) After April 16, 2009, Dandekar allegedly "increased the

2

severity and frequency" of "abusive and offensive language, including derogatory slurs" about Shamim's ethnicity and religion. (*Id.* ¶ 19.)

On April 23, 2009, Shamim e-mailed Carr and Peter Zogg, Dandekar's supervisor, requesting that he be allowed to report only to Ehning. (*Id.* ¶ 20.) Shamim's request was denied and Dandekar continued to supervise him. (*Id.*) Thereafter, Shamim alleges that Dandekar "began to intentionally undermine [Shamim's] credibility with upper levels of management." (*Id.*) Specifically, Shamim avers that on May 11, 2009, Dandekar falsely told Zogg that Shamim thought a presentation by Zogg was a "joke." (*Id.* ¶ 21.) After these comments were made, Shamim informed Carr that Dandekar continued to verbally abuse and harass him through the use of "offensive slurs" regarding his ethnicity and religion. (*Id.* ¶ 22.) Shamim again requested that Dandekar no longer be allowed to be his supervisor. (*Id.*) On May 15, 2009, Shamim was discharged by Siemens. (*Id.* ¶ 23.) No advance notice or severance pay was offered. (*Id.*)

Shamim further alleges that on June 10, 2009, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"). (*Id.* ¶ 24.) Attached to Shamim's complaint is a June 10, 2009 Charge of Discrimination ("June 10th Charge"). (R. 12, Am. Compl., EEOC Charge at 17.) The June 10th Charge was presented to the EEOC, and in the field entitled "state or local agency, if any" both the Illinois Department of Human Rights and the EEOC are listed. (*Id.*) Shamim indicated that the discrimination was based on retaliation and stated that the latest discrimination took place on May 15, 2009. (*Id.*) Further, in describing the particulars of the discrimination, the June 10th Charge states:

I had been employed by Respondent since March 24, 2008, as a Business Analyst

III. On April 2, 2009, I complained of discrimination. After I complained a Team Manager constantly berated me. On May 15, 2009, I lost my job.

I believe I have been retaliated against for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*) On November 30, 2010, the EEOC mailed Shamim a Dismissal and Notice of Rights to Sue letter ("Notice"). (R. 12, Am. Compl., Notice at 16.) The Notice informed Shamim that he had to file a lawsuit within 90 days of receipt of the Notice, or his right to sue based on the June 10th Charge would be lost. (*Id.*) Shamim avers that he received the Notice on December 1, 2010. (R. 12, Am. Compl. ¶ 26.)

## PROCEDURAL HISTORY

Shamim initiated this action by filing a complaint against Defendants in the Circuit Court of Cook County ("Circuit Court") on January 31, 2011. (R. 1, Not. Removal ¶ 2.) At the time Plaintiff filed his complaint with the Circuit Court, he was being represented by an attorney, W. Mark Weaver. (R. 1-1, Ex. A at 13.) On March 2, 2011, Siemens filed a Notice of Removal with the Northern District of Illinois, Eastern Division, to remove the case from the Circuit Court. (R. 1, Not. Removal.)

On May 2, 2011, Weaver filed an appearance for Plaintiff in this proceeding, which the Court granted on May 4, 2011. (R. 10, Pro Hac Vice Mot.; R. 11, Min. Entry.) Despite Weaver's appearance, Plaintiff filed a *pro se* amended complaint ("Amended Complaint") on June 3, 2011.[1] (R. 12, Am. Compl. ¶ 70.) In his Amended Complaint, Plaintiff alleges seven

---

[1] The Court notes that Shamim's *pro se* Amended Complaint is substantially similar to his original complaint filed with the assistance of counsel in the Circuit Court, as it contains the same claims and factual allegations in support of those claims.

counts against Siemens and Dandekar.[2] (*Id.*) Plaintiff has voluntarily withdrawn several counts from his Amended Complaint, including Counts III, VI, and VII. (R. 27, Pl.'s Resp. at 6-7, 16.) For purposes of the present motion, the relevant counts that remain are Counts I, II, IV, and V. In Count I, Plaintiff alleges a claim of discriminatory discharge pursuant to Title VII and Section 1981. (R. 12, Am. Compl. ¶¶ 27-35.) In Count II, Plaintiff alleges a hostile work environment claim pursuant to Title VII and Section 1981. (*Id.* ¶¶ 36-44.) In Count IV, Plaintiff appears to set forth a state law claim for retaliatory discharge.[3] (*Id.* ¶¶ 51-55.) Finally, in Count V, Plaintiff alleges a state law claim for intentional infliction of emotional distress ("IIED") against Dandekar. (*Id.* ¶¶ 56-59.)

On July 6, 2011, Siemens and Dandekar filed a motion to dismiss several counts of Plainitff's Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim. (R. 20, Defs.' Mot.) Thereafter, on July 12, 2011, a second attorney filed an appearance in this proceeding for Plaintiff. (R. 24, Att'y Appearance.)

## LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to

---

[2] Although Plaintiff does not precisely identify whether Counts I-IV in his Amended Complaint are asserted against both Siemens and Dandekar, Plaintiff does incorporate paragraphs 1 through 26 of his Amended Complaint, which identify both Siemens and Dandekar as Defendants, in each count. (R. 12, Am. Compl. ¶¶ 27, 36, 45, 51, 56, 60, 64.) Accordingly, the Court construes each count as if it were alleged against both Siemens and Dandekar.

[3] The Court construes Count IV as a state law claim because neither Title VII nor Section 1981 is mentioned as a basis for this count, and Plaintiff's response only proffers state law arguments. (R. 27, Pl.'s Resp. at 12.)

dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Id.* Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). "Plausibility" in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 514 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject matter of the case to present a story that holds together." *Id.* In other words, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

Furthermore, a plaintiff's failure to adhere to a statute of limitations is an affirmative defense and "is rarely a good reason to dismiss under Rule 12(b)(6)." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). At the motion to dismiss stage, "the question is only whether there is any set of facts that if proven would establish a defense to the statute of limitations[.]" *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003). A plaintiff need not anticipate affirmative defenses in his complaint in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Gomez v. Toledo*, 446

U.S. 635, 640 (1980)); *see also Indep. Trust Corp. v. Stewart Info. Serv. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). "The exception occurs where . . . the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Lewis*, 411 F.3d at 842 (citing *Leavell v. Kieffer,* 189 F.3d 492, 495 (7th Cir.1999)).

## ANALYSIS

Defendants first argue that Plaintiff's Title VII claims of discrimination and hostile work environment in Counts I and II should be dismissed because they are barred by the statute of limitations. (R. 21, Defs.' Mem. at 4-5.) Alternatively, Defendants argue that even if these claims are not time-barred, they are procedurally barred and must be dismissed because they exceed the scope of the June 10th Charge. (*Id.* at 7-8.) Defendants next argue that Plaintiff's Section 1981 claims of discrimination and hostile work environment in Counts I and II should be dismissed because they fail to state a claim. (*Id.* at 8-9.) With respect to Count IV, Defendants argue that Plaintiff's retaliatory discharge claim should also be dismissed because it is preempted by the Illinois Human Rights Act ("IHRA"). (*Id.* at 9-10.) Finally, Defendants argue Plaintiff's IIED claim in Count V is time-barred, and even if Count V is not time-barred, Plaintiff fails to state an IIED claim. (*Id.* at 10-12.) The Court addresses each argument in turn.

## I.     Title VII claims in Counts I & II

Defendants first argue that Plaintiff's Title VII claims in Counts I and II are time-barred. (R. 21, Defs.' Mem. at 4.) Plaintiff appears to concede that he filed his complaint outside of the statutory period, but argues that he is entitled to equitable tolling. (R. 27, Pl.'s Resp. at 4.) Because the Court dismisses Plaintiff's claims for other reasons, the Court declines to address

these arguments.

Defendants next argue that Plaintiff's Title VII claims for discrimination and hostile work environment in Counts I and II, respectively, exceed the scope of his June 10th Charge. (R. 21, Defs.' Mem. at 7-8.) According to Defendants, because "Plaintiff checked only the retaliation box" on the June 10th Charge, his "discrimination and hostile environment claims [in Counts I and II] are procedurally barred[.]" (*Id.* at 8.) For the reasons discussed below, the Court agrees and dismisses Plaintiff's Title VII claims of discrimination and hostile work environment in Counts I and II because they are procedurally barred.

Generally, "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [his] EEOC charge." *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). This rule serves dual purposes: (1) "affording the EEOC and the employer an opportunity to settle the dispute"; and (2) giving the employer notice of the charges against it. *Id.* While this rule is not jurisdictional, it is a prerequisite with which Title VII plaintiffs must comply prior to filing suit. *Id.* The Seventh Circuits's test for determining whether an EEOC charge encompasses the claims in a complaint is whether the claims are "like or reasonably related to the allegations of the charge," and can be reasonably expected to grow out of such allegations. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir. 1976) (*en banc*). While the standard is a liberal one, claims are not "alike or reasonably related" to the allegations of the charge "unless there is a factual relationship between them." *Cheek,* 31 F.3d at 501. "This means that the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals.*" *Id.* Furthermore, retaliation, discrimination, and harassment claims are normally "not 'like or reasonably' related to one another to permit an EEOC charge of one type

8

of wrong to support a subsequent civil suit for another." *Sitar v. Ind. Dep't of Transp.,* 344 F.3d 720, 726 (7th Cir. 2003).

In Count I, Plaintiff alleges that he has been discriminated against and is a member of a protected "ethnic minority as a native of Pakistan and a religious minority as a Muslim." (R. 12, Am. Compl. ¶ 29.) Count I appears to be a discriminatory discharge claim and in support of this claim, Plaintiff alleges that although he satisfied the normal requirements of his position, he was discharged and replaced by a person who was not Pakistani or Muslim. (*Id.* ¶¶ 32-34.) In Count II, Plaintiff again alleges that he is a member of a protected "ethnic minority as a native of Pakistan and a religious minority as a Muslim." (R. 12, Am. Compl. ¶ 38.) In support of his hostile work environment claim, Plaintiff alleges that he was "subject to harassment regarding his race, ethnicity and religion while employed with Siemens." (*Id.* ¶¶ 39-40.) According to Plaintiff, the harassment "was so severe and pervasive that it altered the conditions of the environment at Siemens and subjected [him] to a hostile and abusive working relationship." (*Id.* ¶ 40.)

In the June 10th Charge, however, Plaintiff indicated that the discrimination he experienced was based on "retaliation" by checking off that box. (R. 12, Am. Compl., EEOC Charge at 17.) Plaintiff did not check off other boxes, including boxes for "race," "religion," or "national origin." (*Id.*) In describing the particulars of the discrimination, Plaintiff focused entirely on retaliatory conduct. For instance, Plaintiff stated that he "complained of discrimination[,]" that "*[a]fter [he] complained* a Team Manager constantly berated [him,]" and that he then lost his job. (*Id.*) In the following sentence, Plaintiff then stated that he believed he had "been *retaliated* against for engaging in a protected activity[.]" (*Id.*) In the June 10th

Charge, Plaintiff did not allege that he believed he had been discriminated against on the basis of his ethnicity or religion when he was terminated, nor did he describe any of the allegedly discriminatory acts that occurred while he was employed with Siemens such as derogatory comments made by Smith about Plaintiff's accent, or the April 2nd e-mail incident involving Smith. Indeed, there is no mention that any individuals aside from the team manager were involved in the conduct being complained about. Nor did Plaintiff describe or mention the harassment regarding his race, ethnicity, or religion that he allegedly experienced and which he felt created a hostile work environment. Instead, Plaintiff only stated that on April 2, 2009, he "complained of discrimination" and then went on to describe what occurred *after* he complained. While Plaintiff mentions that a "Team Manager constantly berated [him,]" Plaintiff did not identify that in berating him, the team manager, presumably Dandekar, made slurs about Plaintiff's ethnicity and religion as he now alleges. Rather, he only indicated that the team manager berated him *after* he complained of prior discrimination.

Here, Counts I and II of Plaintiff's Amended Complaint and his June 10th Charge do not involve the same conduct such that the claims in his Amended Complaint are like or reasonably related to the allegations of the charge. Read fairly, the June 10th Charge suggests claims for both retaliation and retaliatory discharge, but not for discriminatory discharge or conduct that could be construed as harassment that created a hostile work environment. *See Moore v. Vital Prods., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011) (finding that plaintiff's discriminatory discharge claims on the basis of race and sex were not like or reasonably related to allegations in the EEOC charge where plaintiff had focused almost entirely on evidence of a hostile work environment when discussing the particulars of discrimination in the charge, even though plaintiff had

checked off boxes for race and sex discrimination); *Graham v. AT&T Mobility, LLC*, 247 Fed. Appx. 26, 29 (7th Cir. 2007) (unpublished) (affirming district court's decision to dismiss plaintiff's discrimination claim, but not his retaliation claim, where plaintiff only checked the "retaliation" box on his EEOC charge and specifically stated that he was "discriminated against because of retaliation," but failed to state that he was discriminated against on the basis of his race). Discriminatory acts are separate types of conduct from retaliatory acts and, as in *Graham*, there is no suggestion in the June 10th Charge that Plaintiff was asserting that he was discriminated against on the basis of his race, religion, or national origin so as to support Count I of his Amended Complaint. 247 Fed. Appx. at 29. The same is true for Plaintiff's claims of harassment regarding his race, ethnicity, and religion, which allegedly created a hostile work environment. Accordingly, the Court finds that Plaintiff's Title VII allegations in Counts I and II of his Amended Complaint exceed the scope of his June 10th Charge and are procedurally barred.

In an effort to save his claims, Plaintiff argues that "within his contact with the EEOC, in his amended letter dated May 19, 2009, he specifically identified race, national origin (ethnicity) and religious creed as a basis of the discrimination besides the issue of retaliation for complaining about the discrimination[.]" (R. 27, Pl.'s Resp. at 8.) In support of this argument, Plaintiff has attached a declaration, a copy of a May 2009 EEOC intake questionnaire, and a letter that was attached to the May 2009 questionnaire, to his response. (R. 27-1, Shamim Decl. ¶ 9; R. 27-1, EEOC Intake Questionnaire at 3-6.) According to Plaintiff, these documents demonstrate that he was "calling upon the EEOC to investigate these claims as well as retaliation." (R. 27, Pl.'s Resp. at 8.)

11

In deciding a motion to dismiss under Rule 12(b)(6), a court is generally limited to the allegations in the complaint. *Rosenblaum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). A narrow exception to this rule exists where a document is part of the pleadings that are referred to in the plaintiff's complaint and are central to his claim. *See, e.g., Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010) (explaining that in order to consider documents attached to a plaintiff's response to a motion to dismiss the documents must be referred to in the plaintiff's complaint *and* be central to his claim). Here, the Court finds that the EEOC questionnaire and attached letter, which were not referred to or even mentioned in his Amended Complaint (or the June 10th Charge), are not central to Plaintiff's claim. Accordingly, the Court declines to consider the documents and the accompanying declaration.

Nonetheless, Plaintiff argues that "courts have looked beyond the four corners of the EEOC charge form." (R. 27, Pl.'s Resp. at 7.)[4] Plaintiff is correct that "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Cheek*, 31 F.3d at 502 (citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110-11 (7th Cir. 1992)). Courts that have considered such statements, however, have considered them when the charging party incorporated the outside allegations into the charge itself by referencing those statements or documents in the charge or by directly attaching those documents to the charge. For example, in *Box v. A & P Tea Co.*, upon which Plaintiff

---

[4] Were the Court to consider these additional documents, the Court would need to exercise its discretion and convert the motion to dismiss into a motion for summary judgment, pursuant to Rule 12(d). Because the Court finds that consideration of such documents would not change its analysis, however, the Court declines to exercise its discretion to convert the motion to dismiss into a motion for summary judgement. *See Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (holding that district court has discretion when deciding to convert a defendant's motion to dismiss to a motion for summary judgment).

relies, the court considered handwritten annotations that were made directly on the typed charge. 772 F.2d 1372, 1375 (7th Cir. 1985). In a later case, *Rush*, the Seventh Circuit considered a handwritten affidavit submitted by the plaintiff together with her EEOC charge. 966 F.2d at 1110. In *Cheek*, another case upon which Plaintiff relies, the Seventh Circuit considered the plaintiff's "statements in a sworn affidavit that [the plaintiff] filed in support of the charge." 31 F.3d at 502. Significantly, in *Cheek*, the plaintiff also asked the court to consider "allegations she made in a sixteen-page, handwritten letter" that she sent to the EEOC after she filed a charge with the EEOC against the defendant. *Id.* The Court accepted the plaintiff's invitation, "but only to the extent that the letter may be considered an amendment to the original charge within the meaning of 29 C.F.R. § 1601.12(b)." Pursuant to 29 C.F.R. § 1601.12(b), a charge may be amended "to clarify and amplify allegations made therein." The Seventh Circuit interpreted this regulation narrowly when it declined to take into account additional allegations in the letter that did not appear in the EEOC charge and noted that "these additional allegations cannot expand the scope of the allegations in [plaintiff's] original charge; they only may 'clarify or amplify' the allegations in the charge." 31 F.3d at 503.

As in *Cheek*, Plaintiff asks the Court to consider an EEOC questionnaire and a letter that were submitted to the EEOC prior to the June 10th Charge. Even if the Court were to convert the motion to dismiss into a motion for summary judgment, the Court would decline Plaintiff's invitation to consider the additional documents. First, these documents may not properly be considered "amendments" to the June 10th Charge, so as to fall within the meaning of 29 C.F.R. § 1601.12(b), because they were not filed after the June 10th Charge. Second, nowhere in the June 10th Charge did Plaintiff incorporate any of the allegations appearing in the EEOC

13

questionnaire or the letter by referring to these documents in the June 10th Charge or attaching them to the June 10th Charge. Were the Court to consider these documents, it would defeat the purpose of giving the employer notice of the charges against it.

Finally, even if the Court were to consider the additional documents, they would not save Plaintiff's claim. Unlike the plaintiff in *Sickinger v. Mega Systems, Inc.*, upon which Plaintiff relies, it cannot be said that Plaintiff "properly and clearly presented" his additional claims in the EEOC questionnaire and attached letter. 951 F. Supp. 153, 158 (N.D. Ind. 1996) (treating motion to dismiss as a motion for partial summary judgment, and considering retaliatory discharge allegations in EEOC questionnaire where EEOC representative had typed the charge and only included sex discrimination allegations in the charge, but it was clear from the questionnaire that plaintiff was also complaining about retaliatory conduct). In the EEOC questionnaire, Plaintiff again only checked the box for "retaliation," when indicating the basis for his claim of employment discrimination. (R. 27-1, EEOC Intake Questionnaire at 4.) While Plaintiff included a handwritten note next to the retaliation box stating "at a minimum," he did not expand upon his claims in the EEOC questionnaire and referred to the attached letter. (*Id.*)

In the introductory paragraph of his letter, Plaintiff wrote that "[a]nywhere between 7-25 different times, I had clearly stated to refrain from retaliatory acts (i.e., termination)" and then presented a time line of events. (*Id.* at 7.) The first event in the time line states that he "launched a complaint of discrimination," after he perceived discrimination, and then provides that "[t]hroughout e-mail based discussions with [HR], I told them that termination of **MY** employment will be retaliatory." (*Id.*) In the third event of the time line, Plaintiff indicates that he observed an "adverse change" in another employee's behavior, and that he "reminded people

14

that while firing me after a complaint of discrimination may very well be retaliatory, having harassment-like conditions may also be retaliatory." (*Id.*) In a later event in this time line, Plaintiff stated that he "again reminded that harassment, demotion or even a recommendation to have me fired shall be deemed retaliatory." (*Id.* at 8.) Finally, Plaintiff concluded the time line by stating "***I PERCEIVE my job loss as RETALIATORY and I demand justice***." (*Id.*) As a whole, the EEOC questionnaire and attached letter clearly suggest that Plaintiff was only interested in having the EEOC investigate retaliatory conduct, and any mention of discriminatory acts or harassment-like conditions appear to have been included solely to provide context to his retaliation claim. Therefore, even if the Court were to consider these documents, it cannot be said that they clearly present additional claims for discrimination and hostile work environment as in *Sickinger*. Accordingly, the Court dismisses Plaintiff's Title VII claims in Counts I and II.

## II. Section 1981 claims in Counts I and II

Defendants next argue that Plaintiff's Section 1981 claims in Counts I and II should be dismissed for failure to state a claim. In Count I, Plaintiff alleges that he is "both an ethnic minority as a native of Pakistan and a religious minority as a Muslim." (R. 12, Am. Compl. ¶ 29.) In Count II, Plaintiff alleges that he is a "member of a protected ethnic minority as a native of Pakistan and a religious minority as a Muslim[,]" and that he was "subject to unwelcome harassment regarding his race, ethnicity and religion." (*Id.* ¶¶ 38-40.) According to Defendants, because "Section 1981 is limited to addressing issues of racial equality, Plaintiff cannot seek redress for discrimination or a hostile work environment based on his religious-affiliation or his national origin." (R. 21, Defs.' Mem. at 8-9.)

15

Section 1981 prohibits discrimination in "making and enforcing contracts[.]" 42 U.S.C. § 1981. Although Section 1981 does not use the term "race," the Supreme Court has construed Section 1981 to "forbid all 'racial' discrimination in the making of private as well as public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (citing *Runyon v. McCrary*, 427 U.S. 160 (1976)). To state a claim of discrimination under Section 1981, a plaintiff must allege, *inter alia*, that he is a member of a racial minority. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751 (7th Cir. 2006) (citing *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996)). Similarly, to state a hostile work environment claim due to harassment under Section 1981, a plaintiff must allege, *inter alia*, that the harassment was based on "race." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 302 (7th Cir. 2004). Here, Defendants limit their argument to whether Plaintiff's claims are predicated on "racial" discrimination as opposed to discrimination based on his national origin or religious affiliation. (R. 28, Defs.' Reply at 9-10.)

In *Saint Francis College*, the Supreme Court considered the "question whether a person of Arabian ancestry was protected from racial discrimination under § 1981[.]" 481 U.S. at 607. In granting defendants' motion for summary judgment, the district court found that the respondent, a United States citizen born in Iraq, could not maintain a Section 1981 action, reasoning that Section 1981 "did not reach claims of discrimination based on Arabian ancestry." *Id.* at 606. The court of appeals reversed. *Id.* at 607. In affirming the court of appeals, the Supreme Court held that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their *ancestry or ethnic characteristics*." *Id.* at 613 (emphasis added). The Supreme Court went on to state that if respondent could "prove that he was subjected to intentional discrimination based on the fact that

16

he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981." *Id.*

The Seventh Circuit has "followed the [Supreme] Court's instruction in [*Saint Francis College*] to consider the matter of race broadly." *Pourghoraishi,* 449 F.3d at 757 (citing *Lalvani v. Cook Cnty.,* 269 F.3d 785, 789 (7th Cir. 2001); *Sanghvi v. St. Catherine's Hosp., Inc.,* 258 F.3d 570, 573 (7th Cir. 2010); *Bisciglia v. Kenosha Unified Sch. Dist. No. 1,* 45 F.3d 223, 230 (7th Cir. 1995)); *see also Abdullahi v. Prada USA Corp.,* 520 F.3d 710, 712 (7th Cir. 2008) (noting that the loose sense of the term "race" "is the right one to impute to a race statute passed in 1866"). In *Pourghoraishi,* the Seventh Circuit concluded that both its precedent and Supreme Court precedent "dictate[d] that, for the purposes of § 1981, we must view race broadly to encompass those of Iranian ancestry." 449 F.3d at 757. Accordingly the Seventh Circuit found that the plaintiff, a native of Iran, had sufficiently alleged that he was a member of a racial minority. *Id.* The Seventh Circuit has also previously applied Section 1981 to plaintiffs of "Asian Indian" descent or ethnicity. *See Lalvani,* 269 F.3d at 789 (applying Section 1981 without commenting); *Sanghvi,* 258 F.3d at 573 (same).

In the instant case, the Court notes that Plaintiff's allegations that he is "a religious minority as a Muslim[,]" (R. 12, Am. Compl. ¶¶ 29, 38), cannot serve as the basis for his Section 1981 claims because Section 1981 does not encompass claims for religious discrimination. *Saint Francis Coll.,* 481 U.S. at 613. Accordingly, the Court focuses on his allegations in Counts I and II that he is an "ethnic minority as a native of Pakistan." (R. 12, Am. Compl. ¶¶ 29, 38.) In his Amended Complaint, Plaintiff alleges that Smith "repeatedly made derogatory comments about [his] accent" and that Dandekar repeatedly insulted him, and made derogatory or offensive slurs

17

to Plaintiff about his "ethnicity." (*Id.* ¶¶ 16, 19, 22.) Additionally, in Count II, Plaintiff alleges that he "was subject to unwelcome harassment regarding his race, [and] ethnicity[,]" and that the harassment based on his "race" and "ethnicity" "altered the conditions of the environment at Siemens[.]" (*Id.* ¶¶ 39, 40.)

Taking these allegations as true and drawing all reasonable inferences in favor of Plaintiff, as the Court must on a motion to dismiss, the Court finds that these allegations are not solely related to discriminatory acts or harassment concerning Plaintiff's "national origin" as Defendants suggest. Rather, the allegations focus on discriminatory acts and harassment concerning Plaintiff's "ethnicity" as a Pakistani, and with respect to Count II, his "race" as well. While it is true that there is ambiguity in this case because "race" and "national origin" appear to coincide, that is not a sufficient basis for dismissing Plaintiff's Section 1981 claims at this time. *See Abdullahi*, 520 F.3d at 712 (reversing dismissal of plaintiff's Section 1981 claim where pro se plaintiff, an Iranian, only checked off "national origin" and "religion" boxes used to indicate type of discrimination); *compare Mehta v. Des Plaines Dev. Ltd.*, 122 Fed. Appx. 276, 278-79 (7th Cir. 2005) (unpublished) (affirming dismissal of Section 1981 claim where it was expressed in terms of "national origin" rather than "race or ethnicity.") In light of Seventh Circuit precedent, which dictates construing "race" broadly, the Court finds that Plaintiff has sufficiently alleged that he is a member of a "racial" minority. Accordingly, the Court declines to dismiss Plaintiff's Section 1981 claims of discrimination and hostile work environment on this basis.

## III.   Count IV: Whether retaliatory discharge claim is preempted by the IHRA

Defendants next argue that Plaintiff's state law claim for retaliatory discharge in Count IV is preempted by the IHRA and the Court therefore lacks jurisdiction over Count IV. (R. 21,

Defs.' Mem. at 9-10; R. 28, Defs.' Reply at 10-11.) To state a cause of action for retaliatory

discharge under Illinois law, a plaintiff must allege that: "(1) he was discharged, (2) in retaliation

for his activities, and (3) the discharge violates a clear mandate of public policy." *Marron v.*

*Eby-Brown Co., LLC*, No. 11-2584, 2012 WL 182234, at *3 (N.D. Ill. Jan. 23, 2012) (citing

*Patel v. Boghra*, No.07-6557, 2008 WL 2477695, at *5 (N.D. Ill. June 18, 2008)). Illinois courts

have only recognized two types of cases where a "clearly mandated policy" exists: "(1) cases

where the employee suffered an injury and was later discharged after filing a Workers

Compensation claim, and (2) cases where the employee was discharged because he reported

illegal conduct." *Id.* Illinois courts, however, "'have not extended this tort to situations where a

plaintiff alleges that the public policy violated is the policy contained in the [IHRA].'" *Id.*

(quoting *Ring v. R.J. Reynolds Indus. Inc.*, 597 F. Supp. 1277, 1280 (N.D. Ill. 1984)). Rather, the

"comprehensive scheme of remedies and administrative procedures" in the IHRA provides the

exclusive means for redress of civil rights violations. *Mein v. Masonite Corp.*, 485 N.E.2d 312,

315 (Ill. 1985) (affirming dismissal of employee's retaliatory discharge action as preempted by

the IHRA); 775 Ill. Comp. Stat. 5/8-111(D) ("Except as otherwise provided by law, no court of

this state shall have jurisdiction over the subject of an alleged civil rights violation other than as

set forth in this Act.") By contrast, where the claim exists independent of any legal duty imposed

by the IHRA, a claim is not preempted. *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 22 (Ill. 1997).

In the instant case, Plaintiff alleges that Siemens discharged him in retaliation for

complaining about ethnic and religious discrimination. (R. 12, Am. Compl. ¶ 53.) Plaintiff

further alleges that Siemens' discharge of Plaintiff "violates clear mandates of public policy."

(*Id.* ¶ 54.) The public policy against ethnic and religious discrimination, however, is expressly

contained in the IHRA, which provides that "[i]t is the public policy of this State . . . [t]o secure for all individuals within Illinois the freedom of discrimination against any individual because of his or her race, . . . religion, . . . national origin, [or] ancestry . . . in connection with employment." 775 Ill. Comp. Stat. 5/1-102(A). The IHRA also explicitly prohibits retaliation against employees who oppose unlawful discrimination, or who have filed a charge or complaint under the IHRA. 775 Ill. Comp. Stat. 5/6-101(A). Accordingly, Plaintiff's claim is preempted by the IHRA. *See Talley v. Wash. Inventory Serv.*, 37 F.3d 310, 313 (7th Cir. 1994) (affirming district court's dismissal of plaintiff's retaliatory discharge claim based on alleged marital status discrimination because such discrimination was encompassed by the IHRA and therefore plaintiff's claim was within the exclusive jurisdiction of the Illinois Human Rights Commission); *see also Hill v. Vill. of Franklin Park*, No. 07-4335, 2008 WL 686256, at * 7 (N.D. Ill. Mar. 11, 2008) ("Both state and federal courts dismiss, for lack of jurisdiction, Illinois common law claims of retaliatory discharge for opposition to an allegedly unlawful employment practice."); *Smith v. Chi. Park Dist.*, No. 98-1691, 1999 WL 33883, at *3 (N.D. Ill. 1999) (finding that plaintiff's claim of retaliatory discharge, where plaintiff had complained of discriminatory treatment and harassment, was preempted by the IHRA).

Seeking to avoid this result, Plaintiff relies on several cases that clarify that such preemption is limited to situations where a plaintiff's tort claims are not independent of any legal duties established by the IHRA. *See Maksimovic*, 687 N.E.2d at 22 (concluding that "plaintiff's common law tort claims of assault, battery and false imprisonment [were] not inextricably linked with claims of sexual harassment," where plaintiff established the necessary elements of each tort independent of any legal duties created by the IHRA); *Paxson v. Cnty. of Cook, Ill.*, No. 02-2028,

20

2002 WL 1968561, at *4 (N.D. Ill. Aug. 23, 2002) ("The question for this Court is whether Plaintiff has sufficiently pled a cause of action for IIED, separate and distinct from any duties created by the IHRA."); *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 955 (N.D. Ill. 2002) (finding that plaintiff's tort claims of negligence and intentional infliction and emotional distress were not preempted because each tort claim was grounded in legal duties independent of the IHRA). As discussed above, however, the basis for a claim of retaliatory discharge where the plaintiff complains of discriminatory treatment are found in the policies that underlie the IHRA, and the claim is therefore preempted by the IHRA. *Smith v. Chi. Park Dist.*, No. 98-1691, 1999 WL 33883, at *3 (N.D. Ill. 1999) ("The basis for [a retaliatory] discharge being a violation of public policy would be the same policies that underlie the IHRA."). Accordingly, Count IV of Plaintiff's Amended Complaint is dismissed.

## IV.     Count V: Intentional Infliction of Emotional Distress

Finally, in Count V, Plaintiff alleges an IIED claim against Dandekar in his individual capacity. (R. 12, Am. Compl. ¶¶ 56-59.) Defendants first argue that Plaintiff's IIED claim is time-barred. (R. 21, Defs.' Mem. at 10-11.) As in Counts I and II, Plaintiff asserts grounds for equitable tolling. (R. 27, Pl.'s Resp. at 13.) Because the Court dismisses Plaintiff's IIED claim for failure to state a claim, the Court declines to address Plaintiff's equitable tolling argument.

To state a cause of action for IIED under Illinois law, a plaintiff must allege that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. Ct. 1st Dist. 2000) (quoting *Welsh v.*

*Commonwealth Edison Co.,* 713 N.E.2d 679, 683 (Ill. App. Ct. 1st Dist. 1999)); *see also*

*Feltmeier v. Feltmeier,* 798 N.E.2d 75, 80 (Ill. 2003). Whether conduct is extreme and

outrageous is judged on an objective standard, based on all the facts and circumstances of the

particular case. *Graham,* 742 N.E.2d at 866; *see also Honaker v. Smith,* 256 F.3d 477, 490 (7th

Cir. 2001). Illinois case law makes clear that the standard is high and "that under no

circumstances [do] 'mere insults, indignities, threats, annoyances, petty oppressions, or other

trivialities' qualify as outrageous conduct." *Feltmeier,* 798 N.E.2d at 80 (quoting *McGrath v.*

*Fahey,* 533 N.E.2d 806, 809 (Ill. 1988)); *Lewis v. Sch. Dist. #70,* 523 F.3d 730, 747 (7th Cir.

2008) ("This standard is quite high."). Rather, to be considered extreme and outrageous, "a

defendant's conduct must be so extreme as to go beyond all possible bounds of decency" and

must be "regarded as intolerable in a civilized community." *Feltmeier,* 798 N.E.2d at 80-81.

Therefore, "to serve as a basis for recovery, the defendant's conduct must be such that 'the

recitation of the facts to an average member of the community would arouse his resentment

against the actor, and lead him to exclaim[:] Outrageous!'" *Honaker,* 256 F.3d at 490.

In *McGrath,* the Illinois Supreme Court set out several factors to consider in evaluating

whether alleged conduct is extreme and outrageous. 533 N.E.2d at 809-11. Such factors include

the power or authority that a defendant has over a plaintiff and whether the threats were mere idle

threats, whether defendant reasonably believed that his objective was legitimate, and the

defendant's awareness that the plaintiff was susceptible to emotional distress. *Id.* That said,

courts in Illinois, "often hesitate to find a claim for [IIED] in employment situations" because of

the concern that "if everyday job stresses resulting from discipline, personality conflicts, job

transfers or even terminations could give rise to a cause of action for [IIED], nearly every

22

employee would have a cause of action." *Graham*, 742 N.E.2d at 867 (quoting *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1115 (Ill. App. 1st Dist. 1999)). Accordingly, in the employment context, courts "have limited recovery to cases in which the employer's conduct has been truly egregious" and "have denied recovery to plaintiffs who alleged that their employers subjected them to a continuous series of intentionally discriminatory acts." *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 568 (7th Cir. 1997); *see also Bannon v. Univ. of Chi.*, 503 F.3d 623 (7th Cir. 2007) (no extreme or outrageous conduct where plaintiff's primary allegation was that her supervisor caused her emotional distress by his use of racial slurs). In those cases where courts have found outrageous behavior, it is because "defendants threatened to exercise their power to coerce plaintiffs into doing something they would not otherwise do." *Graham*, 742 N.E.2d at 867-68 ("When an employer's conduct is both coercive and retaliatory, courts have generally found the conduct to be extreme and outrageous, constituting a claim for intentional infliction of emotional distress."); *Welsh*, 713 N.E.2d at 684 ("[I]n the absence of conduct calculated to coerce an employee to do something illegal, courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for [IIED]."); *Milton v. Ill. Bell. Tel. Co.*, 427 N.E.2d 829, 833 (Ill. App. 3d Dist. 1981) (finding that employer's conduct in coercing plaintiff to engage in illegal activity and then retaliating against plaintiff when he refused to do so constituted extreme and outrageous behavior).

Defendants argue that Plaintiff has failed to satisfy the first prong of the inquiry. Specifically, they argue that Plaintiff's IIED claim "fails to allege the sort of extreme and outrageous behavior necessary to state a claim[.]" (R. 21, Defs.' Mem. at 11.) In his Amended Complaint, Plaintiff alleges that Dandekar subjected him "to outbursts of yelling, profanity and

23

insults about [his] religion and ethnicity," that Dandekar verbally abused and harassed him through the use of derogatory or offensive slurs regarding Plaintiff's ethnicity and religion, and that Dandekar made false comments to others about Plaintiff. (R. 12, Am. Compl. ¶¶ 16, 19, 21-22.) Plaintiff further avers that "Dandekar's harassment of Plaintiff, including the use of highly offensive racial, ethnic and religious slurs and overall abusive behavior, constitute extreme and outrageous conduct." (*Id.* ¶ 57.) Plaintiff's allegations amount to a complaint that Dandekar verbally insulted him. Although Dandekar was Plaintiff's supervisor and presumably had power and authority over Plaintiff as a result, this is not sufficient to make his insults rise to the level of extreme and outrageous conduct because "[c]onduct which otherwise amounts to no more than insults or indignities is not transformed into extreme and outrageous conduct simply by virtue of an employer-employee relationship." *Lundy v. City of Calumet City*, 567 N.E.2d 1101, 1103 (Ill. App. Ct. 1st Dist. 1991). Additionally, nowhere in his Amended Complaint does Plaintiff allege that he was threatened or coerced into engaging in any sort of activity. While the behavior that allegedly occurred in this case is regrettable and should not be acceptable in the workplace, the Court finds that Plaintiff's allegations cannot rise to the level of extreme and outrageous conduct required to allege a claim for IIED. Rather, as in *Bannon*, this type of conduct is not actionable. 503 F.3d at 630 (no extreme or outrageous conduct where plaintiff was excluded from meetings, denied responsibility of organizing meetings, and subjected to racial slurs and comments by her boss that she was stupid); *see also Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (affirming dismissal of plaintiff's IIED claim where plaintiff alleged that she was subject to discriminatory conduct, including being reprimanded without cause, being forced out of a management position, being falsely accused of having poor sales, and being threatened with

24

discipline, amongst other actions); *Lundy*, 567 N.E.2d at 1103 (affirming trial court's dismissal of plaintiffs' IIED claim where plaintiffs, police officers, alleged that defendant stripped them of their badges and guns, made public statements asserting they were suffering from mental illness, clocked those statements as official findings, and purposely sent the order to plaintiffs unsealed and through other officers). Accordingly, the Court dismisses Count V for intentional infliction of emotional distress against Dandekar because Plaintiff has failed to allege the type of extreme and outrageous conduct that is actionable.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (R. 20) is granted in part and denied in part. Specifically, the motion is GRANTED as to Plaintiff's Title VII claims in Counts I and II, and as to Counts IV and V. The motion is DENIED as to Plaintiff's Section 1981 claims in Counts I and II. The parties are requested to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities. The parties shall appear for a status hearing on April 24, 2012 at 9:45 A.M.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Date:** March 30, 2012